# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

<div style="float:left">

CHAMBERS OF
**DEBORAH L. BOARDMAN**
UNITED STATES MAGISTRATE JUDGE

</div>

<div style="float:right">

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

</div>

May 29, 2020

LETTER TO COUNSEL

RE:     *Cynthia J. v. Saul*
        Civil No. DLB-19-909

Dear Counsel:

On March 27, 2019, Plaintiff Cynthia J. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF No. 10 ("Pl.'s Mot."), ECF No. 13 ("Def.'s Mot."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Plaintiff protectively filed her claims for benefits on October 30, 2014, alleging an onset date of June 12, 2014. Tr. 207, 211. Her claims were denied initially and on reconsideration. Tr. 128-32, 135-38. A hearing was held on August 31, 2017, before an Administrative Law Judge ("ALJ"). Tr. 37-81. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 17-31. The Appeals Council denied Plaintiff's request for review, Tr. 1-8, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "relapsing and remitting multiple sclerosis, degenerative disc disease and protruding discs of the cervical, thoracic, and lumbar spines, chronic obstructive pulmonary disorder (COPD), asthma, and obesity." Tr. 20. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) including occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, never climbing ladders, ropes, or scaffolds, and having no

*Cynthia J. v. Saul*
Civil No. DLB-19-909
May 29, 2020
Page 2

more than occasional exposure to extreme heat and cold, humidity and wetness, vibration, or fumes, odors, dusts, gases, or pulmonary irritants.

Tr. 24.  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as an office assistant or front office worker, and that, in the alternative, she could perform other jobs existing in significant numbers in the national economy.  Tr. 29-30.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 31.

Plaintiff makes two primary arguments on appeal: (1) that the ALJ's RFC assessment was not supported by substantial evidence; and (2) that the ALJ improperly assessed Plaintiff's credibility.  Pl.'s Mot. 3-15.  Neither argument has merit for the reasons below.

<u>The ALJ's RFC assessment was supported by substantial evidence.</u>

Plaintiff challenges the ALJ's RFC determination on the bases that the ALJ (1) failed to properly perform a function-by-function assessment of Plaintiff's abilities; (2) failed to address Plaintiff's complaints of fatigue; (3) failed to evaluate the combined effect of her impairments; and (4) rejected the opinion evidence.  Pl.'s Mot. 5-9.  These arguments are not persuasive.

First, Plaintiff's argument that the ALJ "failed to perform a function by function assessment of [her] abilities to perform work-related activities," Pl.'s Mot. 6, does not hold water. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *3.  The ALJ is required to include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p).  Here, the ALJ's RFC assessment included discussions of the relevant evidence, including Plaintiff's testimony and subjective allegations, medical treatment notes, and medical opinion evidence, and the ALJ explained how the evidence supported her conclusions.  *See* Tr. 24-29.  The ALJ's RFC discussion provides substantial evidence for her conclusion that Plaintiff could perform a range of sedentary work with postural and environmental limitations.

Plaintiff specifically argues that because the ALJ "never determined the amount of sitting, standing, walking, and lifting that the Plaintiff was capable of performing," the RFC limitation to sedentary work was not supported by substantial evidence.  Pl.'s Mot. 7.  The ALJ expressly limited Plaintiff to "sedentary work."  By doing so, she determined the extent of the physical activities that Plaintiff was capable of performing.  According to the regulations, sedentary work:

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5 (S.S.A.). These definitions sufficiently address the amount of sitting, standing, walking, and lifting that the Plaintiff was capable of performing. The ALJ is not required to include further limitations if the claimant is able to perform the amount of sitting, standing, walking, and lifting associated with sedentary work. *See Harper v. Comm'r, Soc. Sec. Admin.*, Civil Case No. GLR-13-909, 2014 WL 176777, at *4 (D. Md. Jan. 14, 2014) ("[B]y limiting [Plaintiff] to sedentary work, the ALJ made an implied finding regarding those abilities."). As discussed above, the ALJ adequately assessed the evidence of record, and her RFC assessment, including the finding that Plaintiff could perform sedentary work, is supported by substantial evidence.

In a related argument, Plaintiff asserts that the ALJ's failure to expressly discuss her ability to stand and walk rendered her step-four finding that Plaintiff could perform her past relevant work as an office assistant unsupported by substantial evidence. Pl.'s Mot. 7. Plaintiff points out that, per the VE's testimony, "an individual performing the occupation of office assistant could not be on his or her feet more than one hour to one and one-half hours per day," and sedentary work generally involves standing for two hours in a workday. *Id.* (citing Tr. 79). Even if the ALJ erred at step four, she continued the sequential process and made an alternative finding that there were other jobs existing in the national economy that Plaintiff could perform. Tr. 31. Plaintiff does not challenge the ALJ's step-five finding.

Plaintiff also argues that the ALJ erred by "[saying] nothing regarding [her] abilities to perform work-related functions throughout an entire workday." Pl.'s Mot. 6. An ALJ's RFC assessment reflects the claimant's capacity for work activity on a "regular and continuing basis." 20 C.F.R. §§ 404.1545, 416.945; *see also* SSR 96-8p, 1996 WL 374184, at *1. Therefore, the ALJ's conclusion that the plaintiff could perform sedentary work "implicitly contained a finding that [she] physically is able to work an eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006); *see also Gibson v. Colvin*, Civil No. TMD-14-467, 2015 WL 5315765, at *8 (D. Md. Sept. 2, 2015) ("[T]he ALJ found that Plaintiff had the RFC to perform sedentary work . . ., thus finding that Plaintiff could perform work on a regular and continuing basis, or eight hours a day for five days.").

Second, Plaintiff's assertion that the ALJ failed to address "in any manner" her complaints of fatigue, Pl.'s Mot. 8, is incorrect. Plaintiff cites to numerous documents in the record that refer to her complaints of fatigue, including her hearing testimony and function reports, her sister's

Cynthia J. v. Saul
Civil No. DLB-19-909
May 29, 2020
Page 4

third-party function report, her consultative examination with Dr. Leigh Knotts, the opinion and RFC assessment of Dr. Michele Kennedy, and some treatment records. *See id.* (citing Tr. 51-52, 253-58, 275, 279, 288, 292-93, 356-57, 387, 389, 394, 404, 424, 457, 459, 493). The ALJ discussed all of the records cited by Plaintiff, *see* Tr. 22-29. To the extent Plaintiff is arguing that the ALJ should have mentioned specific evidence from these records, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision.'" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Moreover, the ALJ expressly addressed Plaintiff's complaints of fatigue. She noted that Plaintiff testified that "she naps every day for about 2 hours" and takes breaks when cleaning her home. Tr. 24-25. The ALJ also noted that Plaintiff "reported generalized weakness and fatigue" to her pulmonologist. Tr. 26. The ALJ further noted that Dr. Kennedy, Plaintiff's primary care provider, opined RFC limitations due to, among other symptoms, "chronic fatigue." Tr. 27. As discussed below, the ALJ discussed this opinion and gave it little weight. Furthermore, even if the ALJ erred in her consideration of Plaintiff's complaints of fatigue, Plaintiff does not show that the evidence supports any work-related limitations due to fatigue that the ALJ should have included.

Plaintiff next challenges the ALJ's evaluation of her impairments in combination. Pl.'s Mot. 8-9. Specifically, Plaintiff argues that the ALJ failed to discuss her obesity and degenerative disc disease in the RFC assessment despite the ALJ's step-two finding that both impairments were severe. *Id.* Plaintiff further argues that the ALJ "never mentioned" her asthma diagnosis. *Id.* The Commissioner defends the ALJ's RFC discussion by pointing out that she "explicitly mentioned" these impairments. Def.'s Mot. 11. I agree with the Commissioner. The ALJ noted Plaintiff's obesity, including BMI results. *See* Tr. 25, 27. The ALJ also noted that "[Plaintiff] has frequently received recommendations from various providers to exercise." Tr. 29; *see also* Tr. 25-27. Regarding Plaintiff's degenerative disc disease, the ALJ discussed Plaintiff's treatment records and physical findings from her neurologist and primary care provider, in addition to her MS provider. Tr. 25-27. Lastly, the ALJ noted that Plaintiff's asthma "was treated with medication" and that her pulmonology visits resulted in "normal results on examination." *Id.* Furthermore, Plaintiff does not argue she was harmed by the failure to consider her impairments in combination.

Plaintiff's final RFC argument challenges the ALJ's assessment of the opinion evidence. Plaintiff asserts that the "[ALJ] rejected virtually all of the opinions [] of record." Pl.'s Mot. 9. As a threshold matter, "an ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC." *Livingston v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-10-2996, 2013 WL 674075, at *2 (D. Md. Feb. 22, 2013). Here, the ALJ appropriately discussed and assigned weight to the opinion evidence. The ALJ gave little weight to the opinions noted in Michele Kennedy, D.O.'s letter and partial weight to Dr. Kennedy's physical RFC assessment because they were "not consistent with the record as a whole." Tr. 27-28. The ALJ explained that she included some of the limitations opined in Dr. Kennedy's physical RFC assessment "to give the claimant the greatest benefit." Tr. 28 (noting that, although the record does not fully support such "extreme exertional limitations," the ALJ limited Plaintiff to "a range of sedentary work including postural limitations and environmental limitations of only occasional exposure to extreme heat and cold, humidity and wetness, vibration, or fumes, odors, dusts, gases,

or pulmonary irritants"). The ALJ gave little weight to a primary care provider's opinion that Plaintiff was unable to work because of her MS because "the question of disability is an issue reserved to the Commissioner." Tr. 27-28 (noting the provider's illegible name). The ALJ also gave little weight to Plaintiff's sister's opinions because they were not consistent with the objective evidence and Plaintiff's reporting. Tr. 28-29. The ALJ gave little weight to the State agency consultants' opinions that Plaintiff could perform light work because "the evidence support[ed] a further limitation to sedentary work." Tr. 29. Additionally, the ALJ discussed and assigned weight to the psychiatric opinion evidence of record at step two, including partial weight to the opinion of Leigh Knotts, Psy.D., and little weight to the opinion of Carrie McDonald, LCSW-C. Tr. 22. The ALJ noted that the record supported Dr. Knotts' opinion that Plaintiff "seemed able to understand and complete simple tasks," and that the record did not support therapist McDonald's opinion that Plaintiff's symptoms were "significant enough to impact her ability to obtain and maintain employment." Tr. 22. Therefore, the ALJ appropriately considered the opinion evidence of record.

> The ALJ's assessment of Plaintiff's subjective complaints was supported by substantial evidence.

Second, Plaintiff challenges the ALJ's assessment of her subjective complaints and argues that the ALJ applied an improper legal standard. Pl.'s Mot. 10 (citing to *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). The Fourth Circuit in *Hines* explained that, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." *Hines*, 453 F.3d at 565; *see also Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) ("[S]ubjective evidence of pain intensity cannot be discounted solely based on objective medical findings."); SSR 16-3p, 2016 WL 1119029 (explaining the evidence an ALJ must consider when evaluating the intensity, persistence, and limiting effects of an individual's symptoms; 20 C.F.R. § 404.1529(c)(3) (listing the factors an ALJ must consider, including a claimant's activities of daily living).

Here, the ALJ determined that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements about the intensity, persistence and limiting effects of [her] symptoms" were both "inconsistent" and "not entirely consistent with the medical evidence and other evidence in the record." Tr. 24-25; *see Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints). In making this finding, the ALJ summarized and discussed Plaintiff's subjective complaints and testimony:

> The claimant testified there are days she has numbness in her feet and hands, or tingling in her back, and she naps every day for about 2 hours. She testified she has about three or four bad days a month when she does not want to be around people, feels off balance, and may not get dressed. She testified that stressful events trigger spasms in her face. She testified that she has pain in her legs 4 to 5 days a week, and she rests when she has pain. She testified she walks with a cane. She

*Cynthia J. v. Saul*
Civil No. DLB-19-909
May 29, 2020
Page 6

> testified she can sit about 15 to 20 minutes before having spasms in her hips and back, she can stand for 15 minutes, she can walk one block, and lift a gallon of milk or light laundry basket, and cannot squat. She testified she smokes more than a pack of cigarettes daily.
>
> Although she testified to being able to sit only 15-20 minutes, she also testified she is able to drive herself to doctors' appointments, the grocery store, and to errands within a couple miles of her house, rides a lawn mower, and she wrote in her Function Report she drives to doctors' appointments about 30 miles away. She testified there are about ten days a month she feels pretty good. She testified she can carry grocery bags, does her own house cleaning, with breaks, and has no difficulty with personal care. She testified she attends church. She testified she has difficulties concentrating, but also testified she spends her days watching television. In her Function Report, the claimant indicated she knows she needs exercise and walks around her yard. Although she testified she is limited in her capabilities, the claimant told her neurologist in August 2016, she was under stress "because of her mother who she takes care of."

Tr. 24-25 (citations removed). In assessing Plaintiff's credibility, the ALJ considered the medical evidence, treatment records, opinion evidence, State agency consultant reports, and a third-party function report. Tr. 24-29. Therefore, the ALJ did not rely solely on the absence of objective medical evidence to discredit Plaintiff's subjective complaints.

Plaintiff argues that the ALJ erred in assessing her credibility by not considering the portion of the State agency consultant reports in which they answered "yes" in response to the question "Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone?" Pl.'s Mot. 12 (citing Tr. 87, 98, 111, 122). This argument is not persuasive. Even though the State agency consultants answered one question in her favor, they ultimately concluded that she was not disabled and could perform light work. *See* Tr. 88, 98, 111, 122. Rather than accept the State agency consultants' adverse findings that she could perform light work, the ALJ gave their reports little weight because in her view "the evidence support[ed] a further limitation to sedentary work." Tr. 29; *see* 20 C.F.R. §§ 404.1527, 416.927; SSR 96-6p (explaining that an ALJ "may not ignore [State consultant] opinions and must explain the weight given to these opinions in their decisions").

Plaintiff also challenges the ALJ's characterization of her activities of daily living. Pl.'s Mot. 13-14. She points out that the closest medical provider was a thirty-minute drive from her home in rural Western Maryland and argues that the ALJ should not have counted against her the fact that Plaintiff drove thirty minutes to doctors' appointments. Pl.'s Mot. 13. Even if the ALJ should have recognized that Plaintiff lives in a rural area, far from medical providers, this is not a case where the ALJ failed to consider other factors, beyond objective medical records, that bore on the veracity of Plaintiff's subjective allegations of pain. The ALJ appropriately summarized and considered Plaintiff's subjective statements, as well as the objective results from her medical examinations, to assess her condition.

*Cynthia J. v. Saul*
Civil No. DLB-19-909
May 29, 2020
Page 7


Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence and that the ALJ applied the correct legal standards.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 10, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 13, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge